Good morning. May it please the Court, my name is Craig Berman. I represent the appellant Hal Kessler. I'd like to reserve all my time on rebuttal unless the panel has any immediate questions of any of the briefing. Well, I think we do. I guess the question for you first is why was this anti-slap motion not properly denied? What's the public interest here? Well, Your Honor, the public interest here is the discussion in the two articles, those two articles, the October article and the December article. And the public interest is the variety of articles focused on the producers and the unsafety of production on sets in movies. My client commented on the production and whether there were unsophisticated or unseasoned producers who were there only by investing money or were there for some other reasons. What is the connection here? I mean, the shooting of the Russ Satt, I grant you, is a matter of some public interest. Right. How is that related to what your client then disclosed about his own former client's tax practices? Well, Your Honor, the shooting was part, it started the discussion. The discussion, what the variety was interested in, not so much in the shooting itself, but rather the practice of producers in bringing a production to film was how was that happening. Now, as to the statements my client provided to the variety reporter, there simply is no evidence that my client said anything else other than the five statements which I've identified in our briefing and in our reply brief. The conclusions which are contained in the complaint, the conclusions which are contained in the opposition brief before this court are simply that, they're conclusions. And if you read the simple reading of Exhibit B, which is sort of an amalgam of the two articles, there's the complete composite of the December article and then the last has two paragraphs which are sort of inserted into Exhibit B from the October article. The simple reading of that article of Exhibit B shows that Mr. Kessler provided very limited statements to the reporter. One of them which I thought, and so back to his question that I took, that's a key question, which is how is that a matter of public interest? Not the shooting. No, the tax practice. I don't disagree with you that the article which was prepared, not by my client, by a reporter who has his own sources for whatever he is investigating, the statements made by my client do not relate to taxes or his tax practice. I will concede that as it relates to my client, he never disclosed any tax issues to that reporter. Those are in the article that were placed there by my client. Now, the fact that the reporter takes a position with regards to tax or what they believe is to be important, that's part of their... Well, the fact that they attributed it to your client, you're saying that that was inaccurate. Well, the reporter doesn't attribute the tax sources to my client. The person who attributes the source of that information is the plaintiff. These might be defenses to the claims brought against your client, but I guess the issue is you're here on a slap motion, right? You're basically saying these things that I said are my clients that are protected, and I shouldn't be liable for that. The California law on this has to be in connection with the public issue. It keeps coming back to what's the public issue that this is connected with. Is it the shooting? Is it the tax practices? Or is it something else? Your Honor, I think it's definitely the shooting, and the shooting leads to a discussion in the public amongst them. Remember, the case law is that the public is depending on what that public is. So those people who are reading the variety magazines, reading those articles, they're interested in movie production. They're interested in television production. The safety on sets is what those two articles dealt with. So when my client gives statements with regards to this was an accident waiting to happen, that's not relating to anything his clients told him. It doesn't relate to taxes. It is a statement made within the context of what those articles dealt with, and those articles dealt with the safety on sets. So basically what you're saying is that if there's a reporter willing to write an article and there's a publication willing to publish it, then that automatically means that it's a matter of public interest or nobody would buy the magazine, and I don't think that's the case. No, no, and I apologize. That's not what I'm stating. This was an incident. It still is a matter of public interest. Those trials are still going on now. But you said that the public interest issue is the shooting. That's what you said. Well, the shooting, which gave rise to, in the brief, Your Honor, the shooting gives rise to these articles. The Variety decides to write. They're not going to write an article on the shooting itself. That's going to be for some other journal. But for the Variety, again, going back to what I just said, their audience are, you know, people who are involved in entertainment. And in that entertainment demographic, if you will, those listeners, this is a matter of public interest. This is a matter of what is a matter of interest. I don't know if it's a matter of public interest. Well, the fact going into the cases, a magazine of international and national distribution most certainly is public interest. The Variety is read all over the United States. It's distributed internationally. And, again, the safety on sets is something which is a concern throughout the entertainment industry to which that's the audience. That is the audience of which would be an important matter of public interest. What are the limits on, this is your client's lawyer, right? We're talking about comments by a lawyer about his former client. What are the limits on that under California law to be able to get at, about basically past matters involving a former client? Your Honor, if you actually look at the statements which are attributed to him, the statements are, he hired me. He fired me. It left a bad taste in my mouth. Well, that's definitely not of public interest. Well, so those, when you ask me about statements about his client, those are the statements which are in the article which are about his client. They're not privileged. I think the allegation is that there's other information in this article that is likely sourced to your client. Well, see, that's, Your Honor, I think that's the issue we have with the court's ruling, the lower court's ruling, Your Honor, is that on the, in a slap motion, once you prove that there is an issue of public interest and the speech is made to further that, and you go to the second step, then you go to the second step of can the plaintiff show an ability that they will prevail in a trial? What the district court did was they sort of blended that, those analysis, and it turned what was the analysis on the speech, on the first prong, to almost like a 12B6 motion. So you're tracking the ruling, and the ruling says, and the article turns and then starts talking about text structures. If I credit the plaintiff, then all of the information was provided to the reporter by the defendant. The problem you have there, Your Honor, is that you're taking a 12B6 standard and you're combining it in a slap motion, which is not a 12B6 standard in this particular case because we're challenging not the legal sufficiency but the actual complaint. So you can't credit the allegations in the complaint as being true. You have to go through the declaration and do that second step. On top of it, if you're just a clear reading of Exhibit B, which is the article, the article contradicts what's in the complaint, the allegations in the complaint, because the article says, here are the statements from Mr. Kessler, and then there's documents, and then there's statements about taxes, but that's not attributed to Mr. Kessler. Mr. Kessler's statements are specifically identified. Want to save some time for rebuttal? Yes. We will hear from Counselor Eberle. Good morning. Marty Valenik on behalf of Mr. Salveson. Would the panel like to ask me anything before I begin? Why don't you go ahead and make your argument. We may have some questions. You're welcome. It is not difficult to discern that use of confidential information against a former client can be damaging to the client, even if the attorney is not working on behalf of a new client, and even if none of the information is actually disclosed. The rule appropriately bars the attorney from both disclosing or using the former client's confidential information against the former client. A lawyer may not, in the course of discussing his or own view on a public issue, misuse or reveal a client's contact information. Let me stop you here for a second. I want to get to that point. I think there's a set of questions with regards to the public issue. Counsel seems to suggest that because of the shooting that there was public interest, and so perhaps anything in relation to the shooting, including some producers that were involved that were similar, that now that whole subject then would be consistent with the anti-slap statute. Could you address that? I certainly can. My client was not and is not a producer or tied into this article. Could you use the microphone, please? My client is not tied in a producer or anything else that was related to this movie. The theme, the title, is that the producer, her dad, runs tax scams. A tax lawyer runs tax scams. And the source of the article is the lawyer's lawyer. My client has nothing to do with the shooting or the movie production or anything that's a matter of public concern. The article was not about the shooting or producers. The article was about the producer's dad and the information, most importantly. So here's an article. The theme is that dad runs tax scams, and the lawyer who gives the interview says, oh, yes, Mr. Salveson even told me. I beat the IRS while there is an active audit pending. Imagine the IRS agent that sees that article.  And that's from his lawyer. The quote that I just read is from Oasis West, the Supreme Court case. I have complete faith in this law. Mr. Kessler broke that law. This cannot continue. Are there any, I mean, is there anything a lawyer can say to a media organization that could then be covered by the anti-SLAPP statute when it's about a former client? Is your position, if Judge Mendoza's right that this doesn't involve a public issue, we wouldn't even need to get to that question. But there's some question in my mind as to what kind of protection lawyers get under the anti-SLAPP statute, if any, when they're speaking about a confidential matter involving a former client. Okay. So the answer is not really when the allegation is breach of fiduciary duty, which is what we have alleged here. In that particular case, the focus, according to Kasselman and Chodos and everything else, the focus is on conduct, not on the speech itself. And the allegation is that the lawyer breached his fiduciary duty both under the duty of loyalty, which is we think of paramount importance, and then, of course, confidentiality. That's why that was pleaded second. The minute that the lawyer cooperated with Variety, and as counsel has just stated, the first article was about Mr. Salveson's daughter. Two months goes by, and the same lawyer, who already knows where the focus is going, decides to cooperate and gives this information about his former client. So he had time to develop this, and it's the conduct, the cooperation, which is why Judge Carney said the defendant's position in the SLAPP motion is misleading. If it's as bad as the plaintiff pleads it, or even if it's as innocuous as the defendant is trying to plead it, it has nothing to do with the matter of what they're claiming is the public interest. It is the cooperation, it is the conduct, which leads to the speech. That is not pertinent. Does this case state effectively in the district court, while this appeal is pending? Unfortunately. Is that a requirement by the district court? The motion. That was granted? Yes. What do you hope to get out of this case in terms of relief? What are the damages? Are you asking for some kind of apology? What is the request here? I'm glad you asked. The first thing, since I'm sort of in a vendetta kind of mood about what this lawyer did, is obviously we're going to make sure that this law is enforced. My client has already lost two tax deals because directly of this article. Hundreds of thousands of dollars have been lost, which is hard to prove. We actually have the proof here. That article, the first article about Mr. Salveson's daughter was maybe a couple of paragraphs. The next article was like six pages against Mr. Salveson. When I read it, you know, let me hold on for a second. If you could just, we're sitting here in kind of a bloodless mode. I know you're all worked up about it. So if you could just take a pause. It may well be that the shooting itself doesn't qualify as the matter of public interest, but the arguments you just heard from opposing counsel this morning indicate that that isn't the only thing that could be a matter of public interest, and that there is separately this question that people in the industry are interested in. Would you address the public interest standard as it relates to that asserted matter of public interest, setting aside the shooting as a public interest? The matter of public interest that the defendant or the appellant wants the court to believe will somehow provide some type of protection is that there are people out there that are using tax code sections to raise funds to be used for film production. Okay, that's fine. But what then happened is that there was a shift that a relative of one of the producers who uses that to raise money has all these tax code problems. That is not a matter of public concern. Because of that aspect, that's not a matter of public concern, even if you accept that the public concern here is the financing by a producer. I think film finance could be a matter of public concern. That's fine. But that has nothing to do with someone who's not related to the movie or connected to the movie. You know, earlier this morning, the very first case, his Honor said, you know, how is someone of, and I'm going to mischaracterize that, a limited capacity or someone, how can we see that? How can they possibly help themselves or be able to interpret? You put yourself in the shoes of the party. And I'm asking this court to do the same thing here. Imagine being a lawyer who is a tax lawyer, and your tax lawyer gives up your information on a clearly damaging article, and he knew that it was going to be damaging. He knew it. And he did it intentionally. He did it to hurt his former client. And that is why I have complete faith in this law. I know that law can never, ever allow that to happen. That's why I read Oasis West to the court, just that short little thing. And that, by the way, as Oasis did, they said that that law is pretty much in every jurisdiction. We have to make sure that the lawyers don't breach their duties as fiduciaries and hurt their clients. Please ask another question. Please. It appears, Mr. Blumenthal, that there may not be any other questions. And so I want to thank you for your argument this morning. And we'll hear rebuttal from Mr. Berman. Thank you. Just very briefly, on the stay issue, slight motions, at least in the state court, are absolutely stayed. You don't have to make a request. I ask because, I mean, you properly appealed this case. I've always wondered why these cases are appealable. Because this is an interlocutory appeal. We don't usually allow that. And there's been a lot of circuit law and debate on this issue. But I understand. So we had to bring a motion to stay because we brought a motion to stay and it was granted. Well, it doesn't automatically grant it in federal court and federal district courts. I actually saw cases, Your Honor, that it cannot stay and allow it to continue. Because unlike in the state courts, federal court, on the slight motions, actually allows you to do discovery before you bring a slight motion. Whereas the time constraints in the state court are absolute. You have to bring that motion within 60 days of the service of the complaint. Federal court is a little different. So out of an abundance of caution and not wanting to go through discovery, this may end up in a resolution on this case. We brought the stay motion. The one thing I just want to comment on Mr. Wallenberg's comments was public interest. It's not a matter of taxes being the public interest. The public interest, in fact, the name of the article, the article relates to oversight on productions, the safety on production sets. And, unfortunately, some unseasoned producers who are producing and then thereby allowing safety to go unchecked. And then the last thing you can do. What does that have to do with Mr. Salveson? Well, we didn't write the article, Your Honor, and my client was asked questions about Mr. Salveson or at least his relationship. And by way of background, there's a YouTube video which shows Mr. Salveson, excuse me, Ms. Salveson and my client participating in a. . . So you didn't write the article. We get that. So if the topic, if the article veers off into the safety issue, it's another issue. But the statements that we need to analyze whether those statements are of public interest relate to the tax dealings. That's what we'd have to look to whether or not those statements are of public interest, correct? That's correct. And then tell me again why those statements are of public interest. Well, hang on a minute. His statements are a comment on what is a public interest. And the case law cited in our brief, it doesn't have to be so significant that you are now the espousing opinion or commentator on that area. The fact that you are communicating your position or your statements and inserting it into the public discussion, that's protected speech. So when he says, he hired me, he fired me, he left me a bad taste in my mouth, that's not really moving the public record. But when he's saying that this was, they're unexperienced producers, people who are only investing in the production to get those titles and given those areas of responsibility, which is causing problems, and this was a nightmare waiting to happen, that is inserting into the dialogue, into the public dialogue, the interest. And that interest was to keep the production set safe and the risk of what has occurred, unfortunately, in these low-budget indie films. And with that, Your Honors, unless there's any further questions, I'll submit. Okay. Thank you, Mr. Berman. I want to thank both counsel for the arguments. This matter is submitted. This concludes our arguments for the morning and we'll stand at recess until tomorrow. Thank you all. All rise. This court for this session stands adjourned.
judges: BRESS, MENDOZA, Ericksen